IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Alexandria Division

| UNITED STATES OF AMERICA, | ) | |
|---|---|---|
| | ) | |
| v. | ) | |
| | ) | Criminal No. 1:21-CR-00238-LMB |
| TANNER JACKSON, | ) | |
| | ) | UNDER SEAL |
| Defendant. | ) | |

## SENTENCING MEMORANDUM AND MOTION FOR DOWNWARD DEPARTURE, OR ALTERNATIVELY, A VARIANCE FROM U.S.S.G. OFFENSE LEVEL

Defendant Tanner Jackson, through undersigned counsel, submits this sentencing memorandum and shows the Court as follows:

Defendant Tanner Jackson ("Mr. Jackson") pled guilty to an Information charging Wire Fraud based upon government contracts stated in the stipulated Factual Basis. Mr. Jackson awaits sentencing, ████████████████████████

████████████████████████████████████████████████

████████

### DEFENDANT'S MOTION FOR DOWNWARD DEPARTURE

Mr. Jackson respectfully moves this Court to depart downwardly from the recommended sentence as per the Pre-Sentence Report, pursuant to Chapter 5, Part K of the U.S.S.G. In support of this motion, Mr. Jackson submits the following:

I. Departure Based On Circumstances Of A Kind Not Adequately Taken Into Consideration, And/Or Based On Circumstances Present To A Degree Not Adequately Taken In Consideration

Pursuant to U.S.S.G. §5K2.0(a)(2), the Court can depart based upon

circumstances not adequately taken into consideration. Also, pursuant to U.S.S.G. §5K2.0(a)(3), the Court can depart based upon circumstances present to a degree not adequately taken into consideration. Due to these circumstances, Mr. Jackson respectfully requests that the Court depart downwardly to a level below the U.S.S.G. offense level calculation.



    b.    **Mr. Jackson's activity was not a scheme to place inferior products into use.**

Mr. Jackson's activities that are the basis of the plea of guilty mainly focus on the subject $184,512 contract for helmets and body armor for the State Department. In summary, during the contract completion process, Mr. Jackson's false representation centered on providing an altered ballistic testing report for the subject products. These

were valid, passing ballistic tests by independent testing facilities for the products that were being provided in Top Body Armor's contract; the actual false representation was that the test came from Mr. Jackson instead of the actual manufacturer. The false representation does not involve a failing test represented to be a passing test or an inferior product represented to be an acceptable product.

Regarding another contract where there was a ballistics test report, a proposed 2019 U.S. Air Force contract, initially, Mr. Jackson provided a ballistics test report based upon testing the products with a firearm that Mr. Jackson himself tested. However, Mr. Jackson submitted a report from a Texas Ballistics Laboratory, a name that Mr. Jackson used for this contract, to make it appear there was third-party testing on these products. When submitting these tests, Mr. Jackson offered to submit the products to other independent third-party testing, free of charge, if the government required. There was no question as to the integrity of the products.

The contract, however, was not completed because the U.S. Air Force did not follow-up with consummating the contract. Eventually, the Air Force contacted Mr. Jackson again to renew a similar contract; although, the products in this contract were "certified." "Certified" means that the products were of a known quality; and, therefore, they did not have to be tested before being accepted by the Air Force. This new, modified contract was accepted and completed.

Note that Mr. Jackson conducted in-house testing of Top Body Armor's body armor with firearms to ensure the products' quality and reliability, prior to being involved in government contracting. *See* Top Body Armor, *Strongest Body Armor, Stops*

3

*20 Bullets!,* YOUTUBE (Jan. 5, 2012), https://www.youtube.com/watch?v=IkNZRkfS_1Y&t=131s.

### c. Mr. Jackson continues to accept responsibility.

Mr. Jackson accepted responsibility early in this process, as he retained counsel and began negotiations for an agreement with the Government. Mr. Jackson admitted to his wrongdoing; and he continues to do so.

### d. Mr. Jackson paid restitution prior to sentencing.

Mr. Jackson has paid $184,512.00 to the District Clerk's Office as restitution in this case, as per the stipulated amount in the plea agreement. Mr. Jackson and undersigned counsel understand the Court determines the restitution amount; however, to demonstrate to the Court that Mr. Jackson is serious about continuing to accept responsibility and do the right thing, Mr. Jackson paid the restitution amount as stipulated in the plea agreement.

The restitution is mainly from the government's replacement of the subject helmets and armor in the State Department contract, although these were tested by independent ballistic laboratories and Mr. Jackson tested them with his own firearm.

### e. Mr. Jackson is transitioning out of government contracting.

Mr. Jackson stopped business in and through Top Body Armor LLC USA after ten years of business. Note that Mr. Jackson's business was not only involved in government contracts; in addition, Mr. Jackson's business performed other direct-to-consumer related business. However, Mr. Jackson decided to find a completely

4

different line of work to provide for his family. Mr. Jackson transitioned to renting small residential homes, with Mr. Jackson performing maintenance and his wife providing management. In addition, he finished classes for state certification in installing septic systems in the State of Texas; he is waiting only for an examination date to complete his certification.

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
██████████████████████████████████

1. *Authority for a Downward Departure Without a Government Motion*

███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████
███████████████████████████████████████████





[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

[redacted]

> [redacted]

## II. Alternatively, Mr. Jackson Requests A Variance From The U.S. Sentencing Guidelines Offense Level

Alternatively, Mr. Jackson respectfully requests that the Court grant a variance from the U.S.S.G. level, if the Court does not see fit to depart downwardly as requested herein. Mr. Jackson would request a variance based upon the following, pursuant to 18 U.S.C. § 3553(a)(1), Nature and Circumstances of the Offense.

a. **Personal factors and lack of criminal history.**

Mr. Jackson also asks that this Court utilize its discretion and duty to impose a reasonable sentence independent of the guideline range calculations, in accordance with the sentencing mandate under § 3553(a), specifically pursuant to §3553(a)(1), History and Characteristics of the Defendant.

1. Mr. Jackson has for years been a productive member of society.

2. Mr. Jackson is married and has children for whom he is responsible.

3. Mr. Jackson has no criminal history.

4. Mr. Jackson will continue to be a good citizen, as well as a productive member of our society and country.

5. Mr. Jackson has the support of family and community. *See* Exhibit 3, Letters of Support and Character.

6. Mr. Jackson has been a volunteer in his community and church his entire adolescent and adult life, and he is currently still active in both.

7. Mr. Jackson contracted for the sale of products for years without issue before this case.

8. Mr. Jackson has left/is leaving the government contracting business to ensure that the Court and the government know he is not involved in any wrongdoing regarding government contracting. *See* I(e) above.

9. All of the reasons and factors in I above.

b. A sentence within the guideline range is greater than necessary to achieve the goals of sentencing, rebutting the presumption of reasonableness. 18 U.S.C. § 3553(a)(2)(B)(C) and (D).

Although the Fifth Circuit has found that a sentence within the Guidelines is presumptively reasonable, mitigating factors are present in this case demonstrating that a sentence within that range is greater than necessary to achieve the goals of sentencing, rebutting that presumption. *See United States v. Alonzo*, 435 F.3d 551, 554 (5th Cir. 2006); *United States v. Smith*, 417 F.3d 483, 490 (5th Cir. 2005).

1. Mr. Jackson's Age Makes It Unlikely That He Will Be a Recidivist.

Mr. Jackson's age makes it extremely unlikely that he will commit other crimes in the future. After *Booker*, many sentencing courts have considered a defendant's age as a factor for sentencing under § 3553(a), independent of the guidelines. *See Simon v. United States*, 361 F. Supp. 2d 35, 48 (E.D.N.Y. Mar. 17, 2005); *United States v. Thomas*, 360 F. Supp. 2d 238, 243 (D. Mass. 2005); *United States v. Nellum*, 2005 U.S. Dist. LEXIS 1568 (N.D. Ind. Feb. 3, 2005).

The Court's consideration of age is justified given recent findings of the Sentencing Commission. **According to the Commission, for defendants over forty, the risk of recidivism drops dramatically, lessening the need to protect the public from further crimes of the defendant under § 3553(a)(2)(C)**. *See Measuring Recidivism: The Criminal History Computation of the Federal Sentencing Guidelines*, UNITED STATES SENTENCING COMMISSION (May 2004), at https://www.ussc.gov/research/research-publications/measuring-recidivism-criminal-history-computation-federal-sentencing-

guidelines. The Commission noted, "[r]ecidivism rates decline relatively consistently as age increases, from 35.5% under age 21, to 9.5% over age 50." *Id.* at 12.

Although Mr. Jackson is under forty years of age, his lack of criminal history, his marital and familial status, his industrious nature in supporting himself and his family, and his helpfulness to those in the community and in his congregation, suggest he will not be a recidivist.

WHEREFORE, based upon the reasons presented above, Mr. Jackson prays the Court depart downwardly from the recommended U.S.S.G. sentence, pursuant to Chapter 5, Part K of the U.S.S.G. Alternatively, Mr. Jackson requests of the Court a variance from the U.S.S.G. offense level, based the mitigating factors above and Mr. Jackson's personal factors. Mr. Jackson submits that, either way, the Court can impose a sentence lower than the recommended U.S.S.G. level with good reason.

Dated: March 17, 2022

Respectfully submitted,

*/s/ Jesse R. Binnall*
Jesse R. Binnall (VA022)
BINNALL LAW GROUP, PLLC
717 King Street, Suite 200
Alexandria, Virginia 22314
Tel: (703) 888-1943
Fax: (703) 888-1930
jesse@binnall.com

John Teakell, *pro hac vice*
LAW OFFICE OF JOHN R. TEAKELL
2911 Turtle Creek Blvd., Suite 300
Dallas, Texas 75219
Tel: (214) 523-9076

<div style="text-align: right">
Fax: (214) 523-9077  
jteakell@teakelllaw.com

*Attorneys for Tanner Jackson*
</div>

## CERTIFICATE OF CONFERENCE

I, John Teakell, hereby certify that the undersigned conferred with Assistant U.S. Attorney Russell Carlberg regarding the Defendant's Motion for Downward Departure, and he objects to Defendant's motion, but acknowledges that a variance may be appropriate.

<div style="text-align: right">
*/s/ John Teakell*  
John Teakell
</div>

## CERTIFICATE OF SERVICE

I certify that on March 17, 2022, a copy of the foregoing Sentencing Memorandum and Motion for Downward Departure or Alternatively, a Variance was filed with the Clerk of the Court using the Court's CM/ECF system, which will send a copy to all counsel of record.

<div style="text-align: right;">

*/s/ Jesse R. Binnall*
Jesse R. Binnall

*Attorney for Tanner Jackson*

</div>